## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DUANNA PETRUS,

        *Plaintiff*,

    v.

THE DISTRICT OF COLUMBIA, *et al*.,

        *Defendants*.

1:19-cv-03682-RCL

## <u>DEFENDANTS DISTRICT OF COLUMBIA, AIMEE PEOPLES, AND KAITLYN GIRARD'S MOTION FOR SUMMARY JUDGMENT</u>

Defendants District of Columbia (the District), Aimee Peoples and Kaitlyn Girard move this Court under Fed. R. Civ. P. 56 for summary judgment on all claims raised in her Second Amended Complaint.  Plaintiff Duanna Petrus (Petrus) has failed to state a claim against these Defendants on any theory for which she seeks relief.

A memorandum of points and authorities in support of this motion and a proposed order are attached.

Dated: June 10, 2021

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Patricia A. Oxendine*
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Section I

*/s/ Stephanie M. Corcoran*
KERSLYN D. FEATHERSTONE
D.C. Bar No. 47858
Senior Assistant Attorney General
STEPHANIE M. CORCORAN
D.C. Bar No. 1510874
Assistant Attorney General
Office of the Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C.  20001
(202) 724-6600; (202) 615-3910 (direct)
(202) 759-0825; (202) 741-0595 (fax)
kerslyn.featherstone@dc.gov;
stephanie.corcoran@dc.gov
*Counsel for Defendants District of Columbia,*
*Aimee Peoples, and Kaitlyn Girard*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DUANNA PETRUS,<br><br>                    *Plaintiff*,<br><br>         v.<br><br>THE DISTRICT OF COLUMBIA, *et al*.,<br><br>                    *Defendants*. | 1:19-cv-03682-RCL |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS DISTRICT OF COLUMBIA, AIMEE PEOPLES, AND KAITLYN
GIRARD'S MOTION FOR SUMMARY JUDGMENT**

The Defendants District of Columbia (the District), Aimee Peoples, and Kaitlyn Girard submit this memorandum of points and authorities in support of their motion for summary judgment.

## INTRODUCTION

Plaintiff Duanna Petrus' lawsuit against the Defendants fails despite the litany of allegations raised against them.  Petrus cannot tie any actions taken against her to her disability or protected activities.  And Petrus cannot show that her rights under the Americans with Disabilities Act (ADA) or the D.C. Human Rights Act (DCHRA) were violated.  Defendants did not fail to reasonably accommodate Petrus' requests for accommodations.  And she was not terminated because of her disability or because she engaged in protected activities.  Indeed, Petrus's conclusory allegations and arguments cannot withstand summary judgment.

## FACTS

Peoples is the Director of Labor Management and Employee Relations (LMER) for the D.C. Public Schools (DCPS).  Statement of Undisputed Material Facts (SUMF) ¶ 1.  Peoples was

responsible for EEO activity, ADA activity, and employee relations.  SUMF ¶ 2.  Peoples is not responsible for teacher staffing.  SUMF ¶ 3.  At all relevant times, Girard was the Deputy Chief for LMER and was Peoples' supervisor.  SUMF ¶¶ 4, 5.  As part of her duties as Deputy Chief, Girard was charged with terminating employees.  SUMF ¶ 6.  In 2014, DCPS hired Petrus as a special education teacher.  SUMF ¶ 7.  She was assigned to teach at Noyes Elementary School (Noyes).  SUMF ¶ 8.

On September 27, 2016, Petrus was physically attacked by a student at Noyes and was diagnosed with post-traumatic stress disorder (PTSD).  SUMF ¶¶ 9, 10.  Petrus took leave immediately after the September 27, 2016 incident and remained on leave until the end of January/beginning of February 2018.  SUMF ¶ 11.  When Petrus returned from leave, she was assigned to the Incarcerated Youth Program (IYP) in a temporary position.  SUMF ¶¶ 12-14.  IYP is an educational program housed in a District of Columbia Department of Corrections (DOC) prison facility run through a Memorandum of Agreement between DCPS and DOC.  SUMF ¶¶ 15, 16.  The students at IYP are escorted by corrections officers employed by DOC.  SUMF ¶ 17.

In May 2018, Petrus requested an accommodation.  SUMF ¶ 18.  On May 29, 2018, in response to Petrus' request, Peoples sent a reasonable accommodation questionnaire to Petrus' doctor.  SUMF ¶ 19.  On June 5, 2018, Petrus submitted a reasonable accommodation request to be placed in a highly-secured school with trained security professionals on site.  SUMF ¶ 20.  Petrus interviewed for an open position at IYP at the end of June or early July of 2018 but was not selected.  SUMF ¶ 21, 22.  Neither Peoples nor Girard were on the panel who interviewed Petrus for an open position at IYP.  SUMF ¶ 23.  Petrus does not know if the other teachers who were selected for the open positions at IYP had a disability.  SUMF ¶ 24.  At no time has Petrus

looked at another teacher's personnel file.  SUMF ¶ 25.  No one talked negatively to Petrus about her disability.  SUMF ¶ 26.  Petrus claims that on July 2, 2018, she asked Girard and Peoples for a reasonable accommodation.  SUMF ¶ 27.  And or about July 5, 2018, Peoples again asked them to remain a special education teacher assigned to IYP for the 2018-2019 school year. SUMF ¶ 28.

In August 2018, Petrus learned that because of her request for accommodation, the instructional superintendent was working on an appropriate placement for her.  SUMF ¶ 29.  In August, 2018, Petrus was assigned to Ballou High School as a special education teacher with security professionals.  SUMF ¶¶ 30, 31.  Petrus was issued a safety plan for her assignment at Ballou High School.  SUMF ¶ 32.  Petrus alleges that on August 30, 2018, a student at Ballou High School bumped into her and verbally assaulted her, which she claims her PTSD was triggered.  SUMF ¶¶ 33-35.  On September 3, 2018, Petrus submitted another accommodation request.  SUMF ¶ 36.  On November 20, 2018, Petrus made a request to transfer to request to a position that would meet her accommodations.  SUMF ¶ 37.  Petrus believes that only a position at a highly secured school with trained security professionals will meet her accommodation needs.  SUMF ¶ 38.

Petrus was offered a position at Hardy Middle School (Hardy) in February 2019.  SUMF ¶ 39.  On or about February 14, 2019, Petrus was assigned to Hardy Middle School and was told that if she did not report to the school, she would no longer have a position with DCPS.  SUMF ¶ 40.  A safety plan, and security professionals were available for the placement.  SUMF ¶¶ 31, 41. On February 25, 2021, Petrus informed DCPS she would be not report to Hardy, and did not report to work.  SUMF ¶ 42.  By letter, dated March 1, 2021, Petrus was notified that because she did not report to Hardy on February 25, 2021 as instructed, she was charged as absent

without leave (AWOL) and would be terminated if she failed to report by March 4, 2021.  SUMF ¶ 43.  Petrus did not report to Hardy by March 4, 2019.  SUMF ¶ 44.

On March 1, 2019, Petrus filed a Charge of Discrimination with the District of Columbia Office of Human Rights.  SUMF ¶ 45.  In the Charge, Petrus alleges that she had been discriminated against based on a disability.  SUMF ¶ 45.  And that she had been subjected to disparate treatment in connection with her reasonable accommodation needs, denial of her accommodation requests, and expressed her intention to file a discrimination complaint.  SUMF ¶ 46.  On March 21, 2019, Petrus was terminated by Girard.  SUMF ¶ 47.

On April 12, 2019, Petrus filed an Amended Charge of Discrimination, alleging that she was terminated in retaliation for her participation in protected activity.  SUMF ¶ 48.  She also alleges that the District subjected her to discrimination by selecting less qualified, less senior, non-disabled individuals for assignment as special education teachers at IYP.  SUMF ¶ 49.  On December 10, 2019, Petrus sued the District, Peoples and Girard.  *See* Compl. [1].  On July 29, 2020, Petrus amended the complaint and asserts Count I (Violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq*. against Defendant DCPS); and Count II (Violation of the District of Columbia Human Rights Act, DC Code § 2-1401.01 *et seq*. against Defendant DCPS, Defendant Girard, and Defendant Peoples).  *See* Am. Compl. [22].  Defendants now move for summary judgement on all claims asserted by Petrus.

## LEGAL STANDARD

Summary judgment is appropriate upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is material if it could alter the outcome of the suit under the substantive governing law."  *Slack v. Washington Metropolitan Area Transit Auth*., 353 F.

Supp. 3d 1, 6 (D.D.C. 2019) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant." *Diaz v. Washington Metropolitan Area Transit Auth*., 243 F. Supp. 3d 86, 88 (D.D.C. 2017) (quoting *Anderson*, 477 U.S. at 248).

Conclusory allegations with no basis in the record will not allow the non-movant to escape summary judgment. *Id*. (citing *Ass'n of Flight Attendants-CWA, AFL-CIO v. United States Dep't of Transp.*, 564 F.3d 462, 465 (D.C. Cir. 2009)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. (quoting *Anderson*, 477 U.S. at 249-50). "[A]complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

## ARGUMENT

I.  **Petrus' Failure to Accommodate/Discrimination Claims Under the ADA (Count I) and DCHRA (Count II) Fail.**

The American with Disabilities Act (ADA) makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to" the "discharge of employees" or the "privileges of employment." 42 U.S.C. § 12112(a). Similarly, the D.C. Human Rights Act (DCHRA) makes it unlawful for an employer to discriminate against or otherwise discharge an employee "wholly or partially for a discriminatory reason based upon ... disability." *See* D.C. Code § 2–1402.11(a). Both the ADA and DCHRA also prohibit employers from terminating employees as retaliation for engaging in protected activity under those statutes. *See* 42 U.S.C. § 12203(a); D.C. Code § 2–1402.61. Given the similarities between the

ADA and the DCHRA, the D.C. Court of Appeals looks to decisions construing the ADA for guidance when applying the DCHRA. *See Hunt v. District of Columbia*, 66 A.3d 987, 990 (D.C. 2013) ("Our decisions under the DCHRA regarding whether an employee was discriminated against because of a 'disability' effectively incorporate judicial construction of related anti-discrimination provisions of the [ADA]."), quoting *Ball v. George Washington Univ.*, No. 17-CV-507 (DLF), 2019 WL 1453358, at *8 (D.D.C. Mar. 31, 2019), *aff'd*, 798 F. App'x 654 (D.C. Cir. 2020). While the ADA only applies to employers, individuals may be held liable under the DCHRA. *See MacIntosh v. Bldg. Owners & Managers Ass'n Int'l*, 355 F. Supp. 2d 223, 228 (D.D.C. 2005) (DCHRA provides for recovery from individual supervisors). Because the law involving both claims are similarly analyzed, Defendants combine their arguments for judgment under the ADA/DCHRA.

### A.   Petrus' Disability Was Reasonably Accommodated.

In order to make out a *prima facie* case of disability discrimination under the ADA/DCHRA for failure to reasonably accommodate, a complainant "must demonstrate, among other things, that she is an individual with a disability, and that she can perform the essential functions of her position with or without a reasonable accommodation." *See Barrett v. Covington & Burling LLP*, 979 A.2d 1239, 1250 (D.C. 2009). Further, "If the [complainant] makes a prima facie showing, the employer must demonstrate that it reasonably accommodated the [complainant's] disability." *Id.* Here, given Petrus' PTSD diagnosis, the burden shifts to Defendants to show that they *reasonably* accommodated her disability. *Id.*

Defendants have met their burden. And despite Petrus' claim that the Defendants did not engage in the interactive process, this was far from the case. Petrus simply was dissatisfied with the timeline for when Defendants responded and did not like the choices offered to her—other

than placement at IYP—as reasonable accommodations.  Petrus made several requests for accommodations, which were reasonably accommodated.  When Petrus made her first request in May 2018, she was already assigned to IYP.  SUMF ¶¶ 12, 18.  Similarly, when Petrus made her June 2018 request, she was still assigned to IYP; an assignment she acknowledges satisfied her accommodation request.  SUMF ¶¶ 20, 38.  When that assignment ended in July 2018, Petrus was then assigned to Ballou High School as a special education teacher, and a safety plan was created.  SUMF ¶¶ 30, 32.  Though Petrus alleges a student at Ballou High School bumped into her and verbally assaulted her, which triggered her PTSD, it does not mean that the Ballou assignment was not a *reasonable* accommodation.  SUMF ¶¶ 33-35.

In response to Petrus' September 2018 request for accommodations, and her November 2018 transfer request, she was assigned to Hardy Middle School with a safety plan.  SUMF ¶¶ 39, 41.  That Petrus was not retained at IYP or not returned to that location is, by itself, not enough to show that her disability was not *reasonably* accommodated.  It was.  *See* 42 U.S.C. § 12111(9)(B) (showing that reassignment to a vacant position is a reasonable accommodation). *See also Solloway v. Clayton,* 2018 U.S. App. LEXIS 16588 (11th Cir. 2018)(unpublished) (an employee is not necessarily entitled to the accommodation of the employee's choice).  Because Defendants reasonably accommodated Petrus' accommodation requests by first placing her at Ballou and then at Harding, her failure to accommodate claims fail under the ADA and DCHRA.

### B.   Petrus Was Not Discriminated Against Under the ADA/DCHRA Because of Her Disability.

Petrus argues that Defendants subjected her to unlawful discrimination under the ADA/DCHRA by selecting less qualified, less senior, non-disabled individuals for assignment as special education teachers at IYP.  SUMF ¶ 49.  Contrary to Petrus' arguments that Peoples and Girard are employers under the DCHRA, they are not.  Under the D.C. Human Rights Act,

"[employer means any person who, for compensation, employs an individual, except for the employer's parent, spouse, children or domestic servants, engaged in work in and about the employer's household; any person acting in the interest of such employer, directly or indirectly; and any professional association."  Neither Peoples nor Girard employed Petrus.  Rather, she was employed by DCPS.  SUMF ¶ 7.  And Peoples has no responsibility in hiring teachers.  SUMF ¶ 3.  Moreover, neither Peoples nor Girard were on the panel who interviewed Petrus for the vacant positions at IYP.  SUMF ¶ 23.  And Petrus has not shown they influenced the panel's non-selection of her for the vacant positions.  For these reasons, Petrus' claims fail against Peoples and Girard under the DCHRA.

And other than argue her disability played a role in her non-selection and that less qualified, less senior, non-disabled individuals were selected for those positions, Petrus has presented no proof to support these conclusory claims.  SUMF ¶ 49.  Indeed, Petrus has provided no evidence to show that the other teachers who were selected for the open positions at IYP do not have a disability or were not qualified for the vacant positions.  SUMF ¶ 24.  She has never looked at another teacher's personnel file.  SUMF ¶ 25.  Nor has she shown that Defendants were required to select an individual with a disability for the open positions.  Moreover, Petrus has not shown that her disability played *any* role in her non-selection.  For these reasons, Petrus' discrimination claims under the ADA/DCHRA fail against all Defendants.

## II.     Petrus' Retaliation Claims Under the ADA/DCHRA Fail.

The ADA provides that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]."  42 U.S.C. § 12203(a).  Similarly, under the DCHRA, "it is an unlawful discriminatory practice for an employer to retaliate against a person

on account of that person's opposition to any practice made unlawful by the DCHRA." *See Howard University v. Green,* 652 A.2d 41 (D.C. 1994) (citing *Young v. Sutherland*, 631 A.2d 354, 361 (D.C.1993).  Indeed, under both statutes, "[t]o establish a prima facie case of retaliation, a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." *See Stewart v. Happy Herman's Cheshire Bridge,* 117 F.3d 1278 (11th Cir. 1997), *citing Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993); *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005).  Thus, to establish her retaliation claims, Petrus must show that there "existed a causal link" between her termination and her request for an accommodation or her participation in protected activity.  *Id.*  Petrus has not met this burden.

Petrus argues that Defendants retaliated against her by terminating her because she requested a reasonable accommodation and for engaging in protected activity.  SUMF ¶ 48.  However, Petrus' claims fail.  *First,* there is no showing that Peoples terminated Petrus or weighed in on her termination.  For that reason alone, judgment should be entered in Peoples' favor.

*Second,* while Girard terminated Petrus, no causal link exists between the termination and her protected activity or the termination and her disability.  Petrus has produced no statements made by Girard or any other District employee making threats to terminate her because of her disability.  Indeed, as Petrus concedes, no one talked negatively to her about her disability.  SUMF ¶ 26.  And no threats were made because she engaged in protected activity.  Temporal proximity alone is not enough to support Petrus' claim.  As the record shows, on or about February 14, 2019, Petrus was offered a position at Hardy, with a safety plan, but she rejected the offer and failed to report to work.  SUMF ¶¶ 39-41, 44.  As Petrus acknowledges, she was

warned that if she didn't return to work and report to Hardy, she would be placed in absent without leave status.  SUMF ¶ 43.  And Petrus was warned that she would no longer be employed by DCPS.  SUMF ¶ 40.  In fact, when Petrus did not report to work on February 25, 2019 as instructed, she was again warned on May 1, 2019 that she had been charged as AWOL for the missed work and would be terminated if she failed to report to work by May 4, 2019. SUMF ¶ 43.  Petrus filed an EEOC Discrimination Charge on March 1, 2019, the same day she was told she would be terminated if she did not report to work by March 4, 2019.  SUMF ¶ 45. Consistent with what she was told, Petrus was terminated on March 29, 2019.  SUMF ¶ 47. Petrus was terminated because she failed to report to work; not because she engaged in protected activity or because of her disability.  Termination resulting from not reporting to work is a nondiscriminatory reason for an employer's decision.  *See McFarland v. George Washington Univ.,* 935 A.2d 337, 355 (D.C. 2007) (holding "[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").  Given the Defendants' legitimate, nondiscriminatory reason for terminating Petrus, and her failure to provide evidence to show pre-text or that the termination was in retaliation because she was disabled or engaged in protected activity, judgment should be entered in Defendants' favor.  *See Minter v. District of Columbia*, 809 F.3d 66, 71 (D.C. Cir. 2015), citing *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008).  Additionally, the District of Columbia Circuit has stressed that courts should tread carefully when evaluating employers' personnel decisions.  *See Ball v. George Washington Univ.*, No. 17-CV-507 (DLF), 2019 WL 1453358, at *8 (D.D.C. Mar. 31, 2019), *aff'd*, 798 F.

App'x 654 (D.C. Cir. 2020).  On this record, judgment should be entered in the Defendants'

favor.

## CONCLUSION

For these reasons, the Court should grant the Defendants' motion for summary judgment.

Dated: June 10, 2021                    Respectfully submitted,

                                        KARL A. RACINE
                                        Attorney General for the District of Columbia

                                        CHAD COPELAND
                                        Deputy Attorney General
                                        Civil Litigation Division


                                        */s/ Patricia A. Oxendine*
                                        PATRICIA A. OXENDINE
                                        D.C. Bar No. 428132
                                        Chief, Civil Litigation Division, Section I


                                        */s/ Stephanie M. Corcoran*
                                        KERSLYN D. FEATHERSTONE
                                        D.C. Bar No. 47858
                                        Senior Assistant Attorney General
                                        STEPHANIE M. CORCORAN
                                        D.C. Bar No. 1510874
                                        Assistant Attorney General
                                        Office of the Attorney General
                                        Civil Litigation Division
                                        400 6th Street, NW
                                        Washington, D.C.  20001
                                        (202) 724-6600; (202) 615-3910 (direct)
                                        (202) 759-0825; (202) 741-0595 (fax)
                                        kerslyn.featherstone@dc.gov;
                                        stephanie.corcoran@dc.gov
                                        *Counsel for District of Columbia, Aimee Peoples,*
                                        *and Kaitlyn Girard*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DUANNA PETRUS,

                     Plaintiff,

      v.

THE DISTRICT OF COLUMBIA, *et al.*,

                 Defendants.

1:19-cv-03682-RCL

## <u>ORDER</u>

Upon consideration of Defendants District of Columbia, Aimee Peoples, and Kaitlyn Girard's Motion for Summary Judgment, any opposition, reply, and the entire record, it is this _____ day of _____ 2021,

ORDERED:  that the Defendants' Motion is GRANTED for the reasons set forth in their motion; and it is,

FURTHER ORDERED: that judgment is entered in favor of the Defendants on all claims.

_____
JUDGE ROYCE C. LAMBERTH
U.S. District Court for the District of Columbia